**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PacifiCare of Arizona, Inc., | No. CV06-00132-PHX-NVW |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| Surgical Assistant Associates, L.L.C., an Arizona limited liability company, | |
| Defendant. | |

This action raises the question of whether Defendant Surgical Assistant Associates, L.L.C., may directly bill the Medicare beneficiaries of Plaintiff PacifiCare of Arizona, Inc., for the difference between the Medicare-approved rate of reimbursement for a medical service and Defendant's higher price for the same service. The court held a bench trial on March 1, 2007, with the benefit of stipulated facts and briefing in the form of Plaintiff's Motion for Summary Judgment. The parties submitted the case on their Partial Agreed Statement of Facts (Doc. # 30) and on their respective evidence offered in connection with the Motion for Summary Judgment (Doc. ## 35, 40, 41, and 43) and additional documentary evidence offered at trial. Pursuant to Rule 52(a), Fed. R. Civ. P., the court adopts the Partial Agreed Statement of Facts (Doc. # 30) as the court's findings of fact, in addition to the findings of fact stated in this order. Conclusions of law are also stated below.

## I. Findings of Fact

Established under the Social Security Act of 1965, Medicare provides federally subsidized health insurance to eligible elderly and disabled individuals and is divided into four parts, three of which are relevant here. Medicare Part A provides premium-free coverage for hospital, home health care, hospice and other related services. Medicare Part B covers costs pertaining to common physician services and outpatient care for a small annual premium. Parts A and B are fee-for-service programs directly administered by the federal government and commonly referred to as "original Medicare." As an alternative to Parts A and B, Medicare Part C allows eligible individuals to receive federally subsidized care through private insurance plans under a program known as "Medicare Advantage" or "Medicare+Choice." Insurance companies who participate in this program contract with the Centers for Medicare and Medicaid Services ("CMS") to administer Medicare benefits to eligible beneficiaries by means of private fee-for-service, managed care, and preferred provider plans. Part C providers are obligated to comply with Medicare's regulatory scheme in administering the federal benefits.

Plaintiff PacifiCare of Arizona, Inc. ("PacifiCare"), is a state-licensed health care service organization that contracts with employers to arrange for the provision of covered medical services to eligible employees and their dependents through a network of physicians, specialists, hospitals, and supporting organizations. Designated as a Medicare Advantage Health Maintenance Organization under contract with CMS, PacifiCare participates in Medicare Part C by offering an insurance product known as "Secure Horizons." In administering Secure Horizons, PacifiCare maintains terms for reimbursement rates, quality controls, and compliance with state and federal Medicare regulations for services offered within its provider network.

Defendant Surgical Assistant Associates, L.L.C. ("SAA"), is an Arizona limited liability company that provides surgical assistance to hospitals and surgeons on an independent-contractor basis. SAA is not a contracting Medicare provider, and it has not contracted to serve as a provider within the PacifiCare network. Neither SAA nor any of its

- 2 -

employees hold state surgical assistant certifications or licenses because Arizona does not offer such credentials.

Over the course of several years, SAA provided its services to numerous PacifiCare Secure Horizons beneficiaries. Prior to doing so, however, SAA neglected to explain to the beneficiaries or other interested parties any intention to accept only its own reimbursement rates as payment in full, rather than the lower rates prescribed by Medicare, and it explicitly indicated its acceptance of "assignment" of the Medicare rates in numerous insurance claim forms submitted to PacifiCare between September 2001 and April 2005. PacifiCare therefore processed the claims and reimbursed SAA at Medicare rates with the understanding that SAA acknowledges Medicare reimbursement as full consideration for its services. When PacifiCare first learned that SAA would not accept those rates in April 2005, it immediately demanded that the surgeons in its network cease using SAA's services in connection with the treatment of Secure Horizons beneficiaries. PacifiCare would not have allowed SAA to provide its services to any of those beneficiaries if it had known that SAA in fact rejects Medicare assignment as full payment.

Shortly after PacifiCare directed the relevant surgeons and hospitals to cease using SAA's services, SAA resubmitted "corrected" insurance claim forms to PacifiCare. Some of the forms were corrected long after the completion of their original counterparts and, unlike all of the forms previously submitted, indicated that SAA does not accept Medicare assignment. SAA initially accepted the Medicare rates only because PacifiCare made the acceptance a precondition of payment, and it now intends on the basis of the "corrected" forms to engage in "balance billing," a practice of billing PacifiCare and its beneficiaries for the cost of SAA services in excess of the Medicare-approved reimbursement rates. The estimated aggregate value of these disputed bills is approximately $400,000. SAA's conduct has harmed and will harm PacifiCare by interfering with the business relationship between PacifiCare and its beneficiaries and by damaging PacifiCare's good will with beneficiaries who receive bills from SSA for services they expected to be covered by PacifiCare. This injury is inherent in SAA's conduct and therefore readily inferable.

Believing that the "corrected" claim forms are not legally operative and that Medicare does not permit reimbursement in the circumstances of this case beyond the federally prescribed rates, PacifiCare filed this action seeking (1) a declaratory judgment that SAA must accept Medicare rates as payment in full for services previously rendered and (2) a permanent injunction barring SAA from billing PacifiCare and its Secure Horizons beneficiaries for the balance of the asserted charges for those services. The relief sought does not address any future services, as PacifiCare ceased allowing SAA to provide services once SAA began refusing to sign off as accepting assignment of the Medicare payments. The parties stipulated on April 19, 2006, to a preliminary injunction prohibiting SAA from engaging in balance billing until a final judgment has been entered.

## II.     Conclusions of Law

Plaintiff's action rests on two principal arguments. First, PacifiCare contends that federal law prohibits entities such as SAA from engaging in balance billing by requiring them to accept Medicare-approved reimbursement rates as payment in full for services to Medicare beneficiaries. Second, PacifiCare argues that even if federal law did not proscribe balance billing, SAA is prohibited from engaging in that practice in light of its repeated agreement to accept Medicare rates.

Approaching the arguments in reverse order, SAA plainly contracted to accept the Medicare reimbursement rates as full consideration for its services. The insurance claim forms submitted to PacifiCare in relation to services performed for Secure Horizons beneficiaries explicitly represent that SAA accepts the Medicare rates and reflect the mutual assent of the parties. SAA asserted at oral argument that the agreements were contracts of adhesion because SAA initially assented to the Medicare rates only after PacifiCare threatened to otherwise withhold payment. However, even assuming that SAA properly characterizes the agreements, contracts of adhesion are "fully enforceable according to [their] terms" unless their requirements fall outside the reasonable expectations of the adhering party or are unconscionable. *Broemmer v. Abortion Servs.*, 173 Ariz. 148, 151, 840 P.2d 1013, 1016 (1992). In this case, the consequences of accepting assignment were both

1   actually anticipated and reasonably anticipatable by SAA, an entity familiar with Medicare's
2   reimbursement scheme. The fact that PacifiCare created a superior bargaining position for
3   itself by insisting upon assignment after SAA performed its initial services, moreover, did
4   not render the contracts unconscionable or otherwise invalid, particularly given that Medicare
5   assignment still guaranteed SAA's receipt of federally prescribed compensation. *See*
6   Restatement (Second) of Contracts § 208(d) (1981) ("A bargain is not unconscionable merely
7   because the parties to it are unequal in bargaining position."); *Maxwell v. Fidelity Fin. Servs.*,
8   184 Ariz. 82, 87-89, 907 P.2d 51, 56-58 (1995) (noting that unconscionability is indicated
9   by contract terms "so one-sided as to oppress or unfairly surprise an innocent party, an
10  overall imbalance in the obligations and rights imposed by the bargain, and significant cost-
11  price disparity"). The course of dealing of the parties, which entailed SAA's repeated
12  provision of services to Secure Horizons beneficiaries with full knowledge of PacifiCare's
13  reimbursement policy, further establishes the mutual and free assent of the parties to contract
14  at Medicare-approved rates. *See* Restatement (Second) of Contracts § 223. Billing the
15  beneficiaries for the balance of the price of SAA services would violate SAA's agreements
16  with PacifiCare.

17  Moving to PacifiCare's first argument that federal law prohibits SAA from billing
18  Secure Horizons beneficiaries for the cost of services in excess of Medicare rates, the
19  dispositive issue is whether SAA constitutes a "provider" within the meaning of the Social
20  Security Act of 1965. In relevant part, that Act states as follows:

> a physician or other entity (other than a provider of services) that does not have a contract establishing payment amounts for services furnished to an individual enrolled . . . with a Medicare+Choice organization . . . shall accept as payment in full for covered services under this title that are furnished to such an individual the amounts that the physician or other entity could collect if the individual were not so enrolled.

25  42 U.S.C. § 1395w-22(k)(1). The implementing regulation for section 1395w-22(k)(1) in
26  turn states:

> [a]ny provider (other than a provider of services as defined in section 1861(u) of the Act) that does not have in effect a contract establishing payment amounts for services furnished to

- 5 -

> a beneficiary enrolled in [a Medicare Advantage] coordinated care plan, [a Medical Savings Account] plan, or [a Medicare Advantage] private fee-for-service plan must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare.

42 C.F.R. § 422.214(a)(1). The combined effect of sections 1395w-22(k)(1) and 422.214(a)(1) is that a "provider" other than a "provider of services" must accept the reimbursement rates of "original Medicare" as full payment if the provider does not have a contract establishing contrary payment amounts for services to Medicare Advantage beneficiaries. As used in section 422.214(a)(1), "provider" is presumably synonymous with the statutory phrase "physician or other entity" and means

> (1) Any individual who is engaged in the delivery of health care services in a State and is licensed or certified by the State to engage in that activity in the State; and
>
> (2) Any entity that is engaged in the delivery of health care services in a State and is licensed or certified to deliver those services if such licensing or certification is required by State law or regulation.

42 C.F.R. § 422.2. Lest "provider" be confused with "provider of services," the Social Security Act separately defines the latter as "a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or . . . a fund." 42 U.S.C. § 1395x(u).

In light of 42 C.F.R. § 422.2, it is apparent that SAA is a "provider." As a limited liability company, SAA is an "entity" under section 422.2. SAA also plainly appears to be "engaged in the delivery of health care services" because its agents assist surgeons during medical procedures. Finally, while Arizona has not licensed or certified SAA to deliver its services, such credentialing is only a prerequisite to "provider" status under section 422.2 "if [it] is required by State law or regulation." *Id.* Because SAA concedes that Arizona does not offer licensing or certification to surgical assistants, and that the State has not required licensing or certification of SAA as an entity, its status as an entity engaged in the delivery of health care services is sufficient under section 422.2.

1       Having concluded that SAA is a "provider," the remaining requirements for the
2  application of 42 C.F.R. § 422.214(a)(1) quickly fall into place. There is no argument that
3  SAA is alternatively a "provider of service" under 42 U.S.C. § 1395x(u). Nor does SAA
4  have a contract establishing payment amounts for services furnished to PacifiCare's Secure
5  Horizons beneficiaries. *See* Doc. # 41 at Exhibit 1. SAA therefore "must accept, as payment
6  in full, the amounts that [it] could collect if the [PacifiCare beneficiaries] were enrolled in
7  original Medicare." 42 C.F.R. § 422.214(a)(1). Even assuming that balance billing in
8  relation to Secure Horizons beneficiaries would not violate SAA's private agreement with
9  PacifiCare, the practice would still violate federal Medicare law and will be prohibited.

10      SAA raised a variety of new issues at oral argument on March 1, 2007, including the
11  contention that it was paid inadequately even under the Medicare regulations, and that this
12  court lacks jurisdiction over PacifiCare's claims because they were not first adjudicated by
13  a federal administrative body. SAA waived these arguments, however, by failing to raise
14  them until the closing argument and depriving the court and PacifiCare of relevant briefing.
15  Even had the arguments been timely raised and thus not waived, SAA has made no showing
16  that the court lacks jurisdiction to adjudicate either PacifiCare's contract claim or its claim
17  under federal law in the circumstances of this case.

18      At trial, PacifiCare stated its expectation that a declaratory judgment would be
19  sufficient relief without a permanent injunction at this time. Therefore, only declaratory
20  relief will be ordered, subject to the possibility of injunctive relief in the future if SAA does
21  not comply with the declaratory judgment.

22      PacifiCare is entitled to declaratory judgment against SAA in the form entered
23  simultaneously herewith.

24      DATED this 2nd day of March 2007.

                                                    _____
                                                    Neil V. Wake
                                                    United States District Judge